UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In re:                                                    Case No. 10-23963-DOb

**DAVID S. BELZAK,**                                       Chapter 13
**LYNDA J. BELZAK,**
                                                          HON. DANIEL S. OPPERMAN
            Debtors.

_____/

## EX PARTE MOTION FOR ORDER AUTHORIZING EXAMINATION OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION AND LORI HARP, OR IN THE ALTERNATIVE, THE ACTUAL PERSON WHO SIGNED THE NOTICE OF MORTGAGE PAYMENT CHANGE, AND REQUIRING PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. PRO. 2004

Daniel M. McDermott, the United States Trustee for Region 9 ("United States Trustee"), by and through undersigned counsel, hereby moves, pursuant to Fed. R. Bankr. P. 2004, Fed. R. Bank. P. 9016 for entry of an order:

1.      Authorizing the issuance of a subpoena *duces tecum* compelling JPMorgan Chase Bank, National Association ("Chase") to produce and permit inspection and copying of those documents identified in Exhibit A attached hereto;

2.      Compelling Lori Harp, to appear for an examination, to be recorded verbatim by stenographic means, to give testimony under oath regarding the factual circumstances regarding the preparation, signing, and filing of the payment change notification filed on July 30, 2013 (Docket no. 57);

3.      Compelling the actual person, if it is not Lori Harp, to appear for an examination, to be recorded verbatim by stenographic means, to give testimony under oath regarding the factual circumstances regarding the preparation, signing, and filing of the payment change notification filed on July 30, 2013 (Docket no. 57);  and

4.      Compelling knowledgeable officer[s] or agent[s] of Chase, to appear for an examination, to be recorded verbatim by stenographic means, through one or more duly authorized representatives most familiar with the documents identified in Exhibit A and categories of testimony identified in Exhibit B attached hereto, to give testimony under oath regarding the categories of documents and testimony identified in Exhibits A and B respectively, at the time and place notified below.

<u>PRODUCTION OF DOCUMENTS</u>
Date:  December 27, 2013
Time:  By close of business at 5:00 p.m. EST
Place:  The Office of the U.S. Trustee
      211 W. Fort Street, Suite 700
      Attn: Kelley Callard
      Detroit, Michigan 48226

<u>APPEARANCE FOR EXAMINATION</u>
Date:  February 11, 2013
Time:  10:00 a.m. EST
Place:  The Office of the U.S. Trustee
      211 W. Fort Street, Suite 700
      Detroit, Michigan 48226

**THIS TIME AND PLACE MAY BE CHANGED BY MUTUAL AGREEMENT OF THE PARTIES IN ORDER TO EFFECTUATE AN ORDERLY EXAMINATION AND/OR TO COMPLY WITH APPLICABLE RULE.**

<u>BACKGROUND</u>

1.      The Debtors filed for Chapter 13 bankruptcy relief on October 26, 2010.

2.      The schedules list the Debtors' interest in property located at 4444 Raymond Road, Beaverton, MI 48612 (the "Property") and Schedule D listed Chase as a secured creditor (Docket no. 1).

3.      The proposed plan provided for the Debtors to pay Chase directly in the amount of $485.00 per month (Docket no. 8).

4.     An Order Confirming Plan was entered on December 17, 2010 (Docket no. 20).

5.     Chase filed a secured proof of claim for the Property on January 19, 2011, and attached a mortgage and a Home Equity Line of Credit ("HELOC") Agreement (Claim 15-1).

6.     The Proof of Claim lists conflicting information about the post-petition payment amount. The Proof of Claim has a section labeled Post-Petition and reads, "The post-petition payments should be $447.52". Directly below that portion of the claim is a section that is labeled Installment Payment Detail and reads, "10/20/2010 $495.28".

7.     On February 24, 2011 Chase filed a Notice of Payment Change listing the ongoing Principal and Interest Payment of $1,820.45 effective February 20, 2011 (Docket no. 25).

8.     The Court Docket reflects that the document (Docket no. 25) was filed by Matt Brown. The actual document has the electronic signature of Lori Harp with qualifying language that Lori Harp was "replacing William Brown".

9.     Chase filed a Notice of Payment Change on March 14, 2011, listing a "New" mortgage payment amount effective March 20, 2011 of $495.28.

10.    The Court Docket reflects that the document (Docket no. 26) was filed by Matt Brown. The actual document has the electronic signature of Lori Harp with qualifying language that Lori Harp was "replacing William Brown".

11.    Chase filed numerous other payment change notifications all of which had the same monthly mortgage payment of $495.28. *See* Docket nos. 31, 32, 33, and 36. None of these were purported to be signed by Lori Harp.

12.    Chase filed another Notice of Mortgage Payment Change on February 28, 2012, listing the same payment amount of $495.28 (Docket no. 40).

13. The payment change notification was filed by Chase, was purported to be signed by Lori Harp, and included contact information.

14. On July 30, 2013, Chase filed a Notice of Mortgage Payment Change ("July Payment Change"), which increased the monthly mortgage payment from $495.28 to $1,694.73 (Docket no. 57).

15. The payment change notification was filed by Chase, was purported to be signed by Lori Harp, and included contact information.

16. On August 7, 2013, the Debtors objected to the July Payment Change (Docket no. 59). The Debtors asserted in their objection, among other things, that Chase: filed a false payment change notification; failed to comply with FRBP 3002.1; and, violated the automatic stay.

17. The objection also asserted that Debtors' counsel was informed by two different Chase representatives that Lori Harp did not exist in the Chase phone book.

18. No response was filed to the Objection.

19. This matter was brought before the Court on August 29, 2013. The United States Trustee attended the hearing. Chase did not attend.

20. Debtors' counsel reiterated the facts in the Objection and discussed in great detail the lengths she had gone to in order to correct the situation prior to filing the objection.

21. The United States Trustee expressed his concern for the violations of FRBP 3002.1 and the bankruptcy code.

22. On September 4, 2013, an Order was entered (Docket no. 63) granting the Debtors' Objection, which set the monthly mortgage payment at $495.25, precluded Chase from

presenting evidence regarding the payment change at any future hearing, and awarding attorney

fees.

        23.      The Order also contained the following language:

> **IT IS FURTHER ORDERED** that the United States Trustee may conduct a 2004 Exam at a time and place convenient to the United States Trustee and that said 2004 Exam shall be allowed upon Ex Parte without the necessity of seeking concurrence from Creditor, JP Morgan Chase Bank.

        24.      Chase's account with the Debtors, subsequent to entry of the above referenced

Order, shows a post-petition payment in the amount of $1,186.46, outstanding fees and charges

in excess of $2,000.00, and post-petition fees due in excess of $1,100.00 (Exhibit C).

        25.      Chase is still claiming it is owed money from the Debtors in excess of the regular

monthly payment of $495.28 per month authorized by this Court.

        26.      The United States Trustee intends to investigate the policies and the conduct of

Chase, its agents, representatives, predecessors, successors, affiliates, subsidiaries or divisions

thereof with the Debtors regarding:

    a.   The Notices of Mortgage Payment Change filed in the Debtors' case;

    b.   The policies and procedures applicable to the Debtors' account for preparing, reviewing, signing and filing Notices of Mortgage Payment Change;

    c.   Complete copies of Chase's policies and procedures for filing payment change notifications, informing the Debtors about such notifications, and implementing any payment changes, including but not limited to training material, manuals, and handbooks;

    d.   Complete copies of Chase's policies and procedures concerning collection activities, including but not limited to training material, manuals, and handbooks;

    e.   Chase's policies and procedures applicable to the Debtors' account or case regarding Chase's electronic servicing systems;

f.   The documents or other information relied on in preparing, reviewing, signing and filing the payment change notifications; and

g.   All of the documents and topics included in exhibit A and B.

27.   The United States Trustee also seeks to question Lori Harp about the facts and circumstances regarding the payment change notifications filed in this case.

28.   Chase filed a Notification of Payment Change that sought to collect funds from the bankruptcy estate that it was not entitled to in violation of the chapter 13 plan and the automatic stay.

29.   Chase filed a false Notification of Payment Change.

30.   Chase filed a Notification of Payment Change that violated the bankruptcy rules and the bankruptcy code.

31.   Chase is trying to collect a pre-petition debt, in continuing violation of the automatic stay.

32.   Rule 2004 permits the "examination of any entity" provided the examination "relate[s] . . . to the acts, conduct, *or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate*, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(b) (emphasis added).

33.   The Order entered on September 4, 2013, allows the United States Trustee to seek this relief on an Ex Parte basis.

34.   These issues directly relate to the administration of this bankruptcy estate and the integrity of the bankruptcy system in the Eastern District of Michigan.  The United States Trustee seeks to ascertain whether the conduct of Chase, its agents, representatives, predecessors, successors, affiliates, subsidiaries or divisions thereof, deviated from the standards established by

the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and/or whether its particular actions threatened an abuse of the bankruptcy system or its procedures. 28 U.S.C. Section 528(3)(G); 11 U.S.C. Section 307; and *In re A-1 Trash Pickup, Inc.*, 802 F.2d 774, 775 (4th Cir. 1996) (Congress intended the United States Trustee to be an enforcer of bankruptcy laws); *see also Countrywide Home Loans v. McDermott (In re O'Neal)*, 426 B.R.267, 273 (N.D. Ohio 2010). (The United States Trustee has standing to bring claims against a mortgage servicer under section 105 of the Bankruptcy Code.)

35.    The circumstances and facts in this case, as detailed above, demonstrate good cause for the United States Trustee to conduct a 2004 examination. Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the investigation of a legitimate interest. *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (citing *Boeing Airplane Co. v. Coggeshall*, 280 F.2d 654 (D.C. Cir. 1960). The United States Trustee's legitimate interest is its watchdog role in the bankruptcy system.

36.    The scope of the exam is narrowly tailored to the specific circumstances and facts of this particular case.

## CONCLUSION

To assure compliance with any such order as contemplated by Fed. R. Bankr. P. 2004(c), the United States Trustee seeks specific Court authority to issue a subpoena to Chase for the reasons stated above if the Motion should be granted.

**WHEREFORE,** The United States Trustee prays that this Court enter an order pursuant to Fed. R. Bankr. P. 2004 and 9016 authorizing the issuance of a subpoena *duces tecum*:

a.    Compelling JPMorgan Chase Bank National Association to produce the documents described in Exhibit A;

b. Compelling Lori Harp, to appear for an examination, to be recorded verbatim by stenographic means, to give testimony under oath regarding the factual circumstances regarding the preparation, signing, and filing of the payment change notification;

c. Compelling the actual person who filed the Notice of Mortgage Payment Change objected to by the Debtors on August 7, 2013, to appear for an examination, to be recorded verbatim by stenographic means, to give testimony under oath regarding the factual circumstances regarding the preparation, signing, and filing of the payment change notification;

d. Compelling JPMorgan Chase Bank National Association to appear for an examination at the date, time and location set forth herein, to answer any and all questions regarding the documents and the topics described in Exhibits A and B respectively; and

e. Granting such further relief as this Court deems just and proper.

**DANIEL M. McDERMOTT**

**UNITED STATES TRUSTEE**
Region 9

By:     /s/ Kelley Callard (P68537)
Kelley.Callard@usdoj.gov
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-6773

Dated:   November 8, 2013

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In re:                                                  Case No. 10-23963-DOb

**DAVID S. BELZAK,**                                    Chapter 13
**LYNDA J. BELZAK,**
                                                        HON. DANIEL S. OPPERMAN
                    Debtors.

_____/

### EX PARTE ORDER FOR BANKRUPTCY RULE 2004 EXAM
### AND REQUIRING PRODUCTION OF DOCUMENTS

**THIS MATTER** came before the Court upon the United States Trustee's Motion to

conduct a Bankruptcy Rule 2004 Examination of JPMorgan Chase Bank National Association

and Lori Harp, or in the Alternative, the Person who Actually Signed the Payment Change

Notice; and compelling JPMorgan Chase Bank National Association and Lori Harp, to produce

and permit inspection and copying of documents listed in Exhibit A of the Motion.  The Court

has considered the pleadings filed herein and no objections to the motion were filed or served.

The Court is otherwise fully advised in the premises and for good cause shown.

  **NOW, THEREFORE**,

  **IT IS ORDERED** that JPMorgan Chase Bank National Association and Lori Harp shall

appear for a Bankruptcy Rule 2004 examination at the offices of the United States Trustee, 211

West Fort Street, Suite 700, Detroit, Michigan on *Tuesday, February 11, 2014, at 10:00 a.m.*

*EST:*

  **IT IS FURTHER ORDERED** that the United States Trustee is hereby authorized to

issue a subpoena via U.S. mail to Lori Harp, at her place of employment, with an address of such

employment to be provided by JPMorgan Chase Bank National Association within seven (7)

days of entry of this Order, for her appearance at a Bankruptcy 2004 examination at the offices

of the United States Trustee, 211 West Fort Street, Suite 700, Detroit, Michigan on **Tuesday, February 11, 2014, at 10:00 a.m. EST.**

   **IT IS FURTHER ORDERED** if Lori Harp does not exist, JPMorgan Chase Bank National Association must produce the name of the actual signer(s) of the Notices of Mortgage Payment Change, Docket Nos. 25, 26, 40, and 57 within seven (7) days of entry of this Order. The United States Trustee is then authorized to issue a subpoena via U.S. mail to the actual signer(s), at their place of employment, with an address of such employment to be provided by JPMorgan Chase Bank National Association within seven (7) days of entry of this Order, for their appearance at a Bankruptcy 2004 examination at the offices of the United States Trustee, 211 West Fort Street, Suite 700, Detroit, Michigan on **Tuesday, February 11, 2014, at 10:00 a.m. EST.**

   **IT IS FURTHER ORDERED** that the United States Trustee is hereby authorized to issue a subpoena *duces tecum* compelling JPMorgan Chase Bank National Association to produce and permit inspection and copying of the documents listed below to the Offices of the United States Trustee, 211 West Fort Street, Suite 700, Detroit, Michigan by **Friday, December 27, 2013, by the close of business, 5:00 p.m. EST:**

1. Complete copies of any and all communication to the Debtors, including the filed payment change notifications.

2. Complete copies of all documents constituting Chase's records of the Belzak Account. Such documents shall include but not be limited to any documents that concern the Belzak Case, including any bankruptcy ledger, promissory note, mortgage, and assignment; any correspondence concerning the Belzak Account (including internal communications and external communications); master payment/loan history; servicing notes; escrow documents; documents concerning fees and costs imposed on the Belzak account; a loan history..

3. Complete copies of Chase's policies and procedures, applicable to the Belzak Case, for preparing, reviewing, signing and filing payment change notifications.

4. Complete copies of Chase's policies and procedures for filing payment change notifications, informing the Debtors about such notifications, and implementing any payment changes, including but not limited to training material, manuals, and handbooks.

5. Complete information applicable to the Debtors' account or case, including but not limited to manuals and handbooks, regarding Chase's internal electronic servicing system.

6. Chase's policies and procedures applicable to the Debtors' account or case, including but not limited to manuals and handbooks, regarding Chase's electronic filing.

7. Complete copies of Chase's policies and procedures concerning collection activities, including but not limited to training material, manuals, and handbooks

8. All documents that Chase relied upon in preparing, reviewing, signing and filing the payment change notifications in this case.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In re:                                              Case No. 10-23963-DOb

**DAVID S. BELZAK,**                                 Chapter 13
**LYNDA J. BELZAK,**
                                                    HON. DANIEL S. OPPERMAN

     Debtors.

_____/

## <u>EXHIBIT A –REQUEST FOR PRODUCTION OF DOCUMENTS</u>

1. Complete copies of any and all communication to the Debtors, including the filed payment change notifications.

2. Complete copies of all documents constituting Chase's records of the Belzak Account. Such documents shall include but not be limited to any documents that concern the Belzak Case, including any bankruptcy ledger, promissory note, mortgage, and assignment; any correspondence concerning the Belzak Account (including internal communications and external communications); master payment/loan history; servicing notes; escrow documents; documents concerning fees and costs imposed on the Belzak account; a loan history.

3. Complete copies of Chase's policies and procedures, applicable to the Belzak Case, for preparing, reviewing, signing and filing payment change notifications.

4. Complete copies of Chase's policies and procedures for filing payment change notifications, informing the Debtors about such notifications, and implementing any payment changes, including but not limited to training material, manuals, and handbooks.

5. Complete information applicable to the Debtors' account or case, including but not limited to manuals and handbooks, regarding Chase's internal electronic servicing system.

6. Chase's policies and procedures applicable to the Debtors' account or case, including but not limited to manuals and handbooks, regarding Chase's electronic filing.

7. Complete copies of Chase's policies and procedures concerning collection activities, including but not limited to training material, manuals, and handbooks

8. All documents that Chase relied upon in preparing, reviewing, signing and filing the payment change notifications in this case.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In re:                                              Case No. 10-23963-DOb

**DAVID S. BELZAK,**                                Chapter 13
**LYNDA J. BELZAK,**

                                                    HON. DANIEL S. OPPERMAN

　　　　Debtors.
_____/

## <u>EXHIBIT B – TOPICS FOR EXAMINATION</u>

1. The payment change notifications filed in the Debtors' case.

2. The policies and procedures, applicable to the Debtors' account, for preparing, reviewing, signing and filing payment change notifications.

3. The policies and procedures for informing the Debtors about such notifications, including but not limited to training material, manuals, and handbooks.

4. The policies and procedures for implementing any payment changes, including but not limited to training material, manuals, and handbooks.

5. Chase's policies and procedures applicable to the Debtors' account or case, including but not limited to manuals and handbooks, regarding Chase's internal electronic servicing system.

6. Chase's policies and procedures applicable to the Debtors' account or case, including but not limited to manuals and handbooks, regarding Chase's electronic filing.

7. Chase's policies and procedures concerning collection activities, including but not limited to training material, manuals, and handbooks

8. All documents that Chase relied upon in preparing, reviewing, signing and filing the payment change notifications in this case.

9. All of the documents included in Exhibit A.



Automatic payments    Home Equity Info    Pay Bills    1098 Tax Statement

## Review your account details —

**Payment information**

| | |
|---|---|
| Post-petition due date | 10/20/2013 |
| Post-petition payment amount (as of your last statement) | $1,186.46 |

**Recent Payment Activity**

| | |
|---|---|
| Date of last payment | 09/16/2013 |
| Amount of last payment | $495.28 |

**Balance Summary**

| | |
|---|---|
| Current principal balance | $41,790.85 |
| Interest | + $401.67 |
| Fees and charges | + $2,024.67 |
| Outstanding balance | $44,931.81 |

**Bankruptcy Information**

| | |
|---|---|
| Bankruptcy chapter | 13 |
| Outstanding post-petition late charges | $0.00 |
| Total outstanding post-petition amount due | $1,186.46 |
| Contractual due date (for information purposes only) | 10/20/2013 |

**Post Petition Payment Breakdown**

| Post-Petition Due Date | Interest Rate | Principal | Interest | Escrow | Total Post-Petition Payment[1] |
|---|---|---|---|---|---|
| 09/20/2013 | 7.00% | $0.00 | $165.44 | $0.00 | $495.28 |

**Line of credit account summary**

| | |
|---|---|
| Original line of credit | $62,650.00 |
| Account origination date | 09/07/1999 |
| Interest rate | 7.00% |
| Variable interest due | $401.67 |
| Interest paid | |
| YTD interest paid | $2,511.46 |
| Interest paid last year | $2,996.84 |

EXHIBIT C



wildfire
credit union

NCUA

10/17/13 10:36                    TELLER # 226

SHARE WITHDRAWAL
CASHIER'S CHECK
CHECK NUMBER: 00 0000196760 CHECK AMOUNT      495.28

0000196760

JP MORGAN CHASE
4104700032211 OCT 2013 PYMT
REMITTER: DAVID S BELZAK

wildfire
credit union

NCUA

09/16/13 12:57                    TELLER # 372

SHARE WITHDRAWAL
CASHIER'S CHECK
CHECK NUMBER: 00 0000194237 CHECK AMOUNT      495.28

0000194237

JP MORGAN CHASE
4104700032211 - SEPT 2013 PYMT
RE:DAVID S BELZAK

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 10-23963-DOb

**DAVID S. BELZAK,**                                Chapter 13
**LYNDA J. BELZAK,**

                                                    HON. DANIEL S. OPPERMAN

         Debtors.
_____/

## BRIEF IN SUPPORT OF THE UNITED STATES TRUSTEE'S MOTION FOR ORDER AUTHORIZING EXAMINATION OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION AND LORI HARP, OR IN THE ALTERNATIVE, THE ACTUAL PERSON WHO SIGNED THE NOTICE OF MORTGAGE PAYMENT CHANGE, AND REQUIRING PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. PRO. 2004

         Daniel M. McDermott, the United States Trustee for Region 9 (the "United States

Trustee"), by and through undersigned counsel, files this brief in support of his Motion for Order

Authorizing Examination of JPMorgan Chase Bank, National Association ("Chase"), Lori Harp,

or in the Alternative, the actual person who signed the payment change notice, and Requiring

Production of Documents Pursuant to Fed. R. Bank. Pro. 2004.

### INTRODUCTION

         Acting pursuant to their statutory role to maintain the integrity of the bankruptcy system,

United States Trustees are carefully reviewing filings by mortgage servicers, including Chase, in

bankruptcy courts across the country.

         In this case, the United States Trustee has sought discovery with an aim towards

resolving issues raised by the payment change notices filed by Chase, and its failure to comply

with this Court's Order.  To that end, the United States Trustee has sought to examine a Chase

representative with knowledge of its claim in this case and has requested that Chase produce

documentary support for its filing of payment change notifications in this case, as well as its assessment of fees.  Moreover, the United States Trustee also seeks to understand if the policies and practices utilized by Chase to prepare and file the payment change notifications are themselves deficient. The United States Trustee seeks this relief on an Ex Parte basis based on an Order of this Court entered on September 4, 2013.

## FACTUAL BACKGROUND

The Debtors filed for Chapter 13 bankruptcy relief on October 26, 2010.  The schedules show the Debtors have an interest in property located at 4444 Raymond Road, Beaverton, MI 48612 (the "Property"). Schedule D lists JPMorgan Chase Bank, National Association ("Chase") as a secured creditor (Docket no. 1). The proposed plan provided for the Debtors to pay Chase directly in the amount of $485.00 per month (Docket no. 8). An Order Confirming Plan was entered on December 17, 2010 (Docket no. 20). Chase filed a secured proof of claim for the Property on January 19, 2011, and attached a mortgage and a Home Equity Line of Credit ("HELOC") Agreement (Claim 15-1).

The Proof of Claim lists conflicting information about the post-petition payment amount. The Proof of Claim has a section labeled Post-Petition and reads, "The post-petition payments should be $447.52". Directly below that portion of the claim is a section that is labeled Installment Payment Detail and reads, "10/20/2010 $495.28".

On February 24, 2011 Chase filed a Notice of Payment Change listing the ongoing Principal and Interest Payment of $1,820.45 effective February 20, 2011 (Docket no. 25). The Court Docket reflects that the document (Docket no. 25) was filed by Matt Brown. The actual document has the electronic signature of Lori Harp with qualifying language that Lori Harp was "replacing William Brown". Chase filed a Notice of Payment Change on March 14, 2011, listing

a "New" mortgage payment amount effective March 20, 2011 of $495.28. The Court Docket reflects that the document (Docket no. 26) was filed by Matt Brown. The actual document has the electronic signature of Lori Harp with qualifying language that Lori Harp was "replacing William Brown". Chase filed numerous other payment change notifications all of which had the same monthly mortgage payment of $495.28. *See* Docket nos. 31, 32, 33, and 36. None of these were purported to be signed by Lori Harp. Chase filed another Notice of Mortgage Payment Change on February 28, 2012, listing the same payment amount of $495.28 (Docket no. 40). The payment change notification was filed by Chase, was purported to be signed by Lori Harp, and included contact information. On July 30, 2013, Chase filed a Notice of Mortgage Payment Change ("July Payment Change"), which increased the monthly mortgage payment from $495.28 to $1,694.73 (Docket no. 57). The payment change notification was filed by Chase, was purported to be signed by Lori Harp, and included contact information.

On August 7, 2013, the Debtors objected to the July Payment Change (Docket no. 59). The Debtors asserted in their objection, among other things, that Chase: filed a false payment change notification; failed to comply with FRBP 3002.1; and, violated the automatic stay. The Objection also asserted that Debtors' counsel was informed by two different Chase representatives that Lori Harp did not exist in the Chase phone book. No response was filed to the Objection.

A Notice of Hearing was filed on August 8, 2013 (Docket no. 60) and this matter was brought before the Court on August 29, 2013. The United States Trustee attended the hearing. Chase did not attend. Debtors' counsel reiterated the facts in the Objection and discussed in great detail the lengths she had gone to in order to correct the situation prior to filing the Objection. The United States Trustee expressed his concern for the violations of FRBP 3002.1 and the

bankruptcy code. On September 4, 2013, an Order was entered (Docket no. 63) granting the Debtors' Objection, which set the monthly mortgage payment at $495.25, precluded Chase from presenting evidence regarding the payment change at any future hearing, and awarding attorney fees. The Order also contained the following language:

> **IT IS FURTHER ORDERED** that the United States Trustee may conduct a 2004 Exam at a time and place convenient to the United States Trustee and that said 2004 Exam shall be allowed upon Ex Parte without the necessity of seeking concurrence from Creditor, JP Morgan Chase Bank.

Chase's account with the Debtors, subsequent to entry of the above referenced Order, shows a post-petition payment in the amount of $1,186.46, outstanding fees and charges in excess of $2,000.00, and post-petition fees due in excess of $1,100.00. Chase is still claiming it is owed money from the Debtors in excess of the regular monthly payment of $495.28 per month authorized by this Court.


## ARGUMENT

## <u>STANDING OF THE UNITED STATES TRUSTEE</u>

The United States Trustee is an official of the United States Department of Justice charged by statute with the duty to oversee and supervise the administration of bankruptcy cases. *See* 28 U.S.C. § 586(a). Congress has expressly given the United States Trustee standing under Section 307 of the Bankruptcy Code to raise and be heard on any issue under Title 11, except that the United States Trustee may not file a reorganization plan under chapter 11. *See* 11 U.S.C. § 307. *See also United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994); *In re Glados, Inc.*, 83 F.3d 1360, 1361 n.1 (11th Cir. 1996); *In re Donovan Corp.*, 215 F.3d 929, 930 (9th Cir. 2000); *In re Clark*, 927 F.2d 793, 796 (4th Cir. 1991); *In re Plaza de Diego Shopping Center*, 911 F.2d 820, 824 (1st Cir. 1990); *In re Revco D.S., Inc.*, 898 F.2d 498, 500

(6th Cir. 1990); *Thompson v. Greenwood, 507 F.3d 416, 420 n.3 (6th Cir. 2007)*. Indeed, the United States Trustee is not required to demonstrate any concrete, particularized injury under Section 307 of the Bankruptcy Code to assert standing. *See United Artist Theater Co. v. Walton, 315 F.3d 217, 225 (3d Cir. 2003)*. Rather, the United States Trustee may take such actions he deems necessary under Section 307 of the Bankruptcy Code to protect the public interest in the enforcement of federal bankruptcy law. *See* Clark, 927 F.2d at 796; *Plaza de Diego*, 911 F.2d at 824.

Moreover, Section 586 of Title 28 contains additional authority for the United States Trustee, among other things: (a) to supervise the administration of cases under Title 11 and take such actions as the United States Trustee deems necessary to prevent undue delay; and (b) perform such other duties consistent with Titles 11 and 28 as the Attorney General may prescribe. *See* 28 U.S.C. §§ 586(a)(3)(G) and 586(a)(5). Even absent the congressional grant of standing to the United States Trustee under Section 307 of the Bankruptcy Code, the U.S. Trustee has standing to act where its actions advance the United States Trustee's interest in the administration of bankruptcy proceedings. *See A-1 Trash Pickup v. United States Trustee (In re A-1 Trash Pickup), 802 F.2d 774, 776 (4th Cir. 1986)*. The United States Trustee has standing to bring claims against a mortgage servicer under section 105 of the Bankruptcy Code. *Countrywide Home Loans v. McDermott (In re O'Neal), 426 B.R. 267, 273 (N.D. Ohio 2010)*.

I.      **The United States Trustee Has the Standing and Power to Conduct Rule 2004 Examinations and to Seek Documents in Support Of Such Examinations.**

Bankruptcy Rule 2004 provides that a motion for the examination of any entity may be brought by "any party in interest." Fed. R. Bankr. P. 2004(a). The United States Trustee is (with exceptions not relevant here) entitled to take all actions permitted to be taken by any other party

in interest. This includes the right to conduct an examination pursuant to Rule 2004 and to seek documents in conjunction with that examination.

Any argument to the contrary should be rejected. **First,** section 307 of the Bankruptcy Code is a broad grant of standing and authority to the United States Trustee to participate in every part of the bankruptcy process. **Second,** even absent section 307, the United States Trustee is a party in interest because of his role in protecting the public interest. *A-1 Trash Pickup v. United States Trustee (In re A-1 Trash Pickup), 802 F.2d 774 (4th Cir. 1986).* **Third,** courts have repeatedly and expressly recognized the United States Trustee's power to conduct Rule 2004 examinations. **Fourth,** any argument to the contrary conflicts with an extensive line of cases upholding the United States Trustee's participation in the bankruptcy process in a variety of contexts, including those situations where the Bankruptcy Code did not explicitly authorize the United States Trustee to act.

A.   **Section 307's Grant of Standing Includes the Power to Conduct 2004 Examinations.**

The United States Trustee is a party in interest because Congress gave him statutory standing and authority with section 307 of the Bankruptcy Code to participate in this case in his capacity as an officer of the Department of Justice. Section 307 provides that "[t]he United States [T]rustee *may raise and may appear and may be heard on any issue in any case or proceeding under [the Bankruptcy Code]* but may not file a plan pursuant to section 1121(c) of [the Bankruptcy Code]." 11 U.S.C. § 307 (emphasis added). As the Third Circuit has noted in discussing section 307, "[i]t is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing." *United States Trustee v. Columbia Gas Sys. (In re Columbia Gas Sys.), 33 F.3d. 294, 296 (3d Cir. 1994).*

That Rule 2004 refers to motions by "a party in interest" without expressly mentioning the United States Trustee does not justify creating an exception to the broad standing and authority conferred by section 307, nor does it justify reading the United States Trustee out of Rule 2004. First, the text of Rule 2004 does not exclude the United States Trustee. Second, the Judicial Branch's Advisory Committee Notes for Rule 2004 nowhere hint at (much less state) any intention on the part of the drafters to exclude the United States Trustee. United States Trustees have conducted Rule 2004 examinations throughout the life of the rule. Despite having amended the rule several times, the drafters have never sought to limit the United States Trustee's use of Rule 2004.

> **1.      Two circuit courts and several other courts have expressly recognized that section 307 establishes the United States Trustee as a party in interest.**

The Seventh Circuit held that, pursuant to section 307, the United States Trustee is a party in interest "when he seeks to protect the rules and procedures of bankruptcy, over which he is the congressionally ordained watchdog." *In re South Beach* Secs., 606 F.3d 366, 372 (7th Cir. 2010) (Posner, J.). The Tenth Circuit has also held the United States Trustee is a party in interest. *Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.),* 23 F.3d 311, 317 n.10 (10th Cir. 1994) ("A 'party in interest' includes . . . the [United States] Trustee.") (citing 11 U.S.C. § 307). Moreover, the Third Circuit has concluded that section 307 makes the United States Trustee the equivalent of a party in interest. *See In re Pillowtex, Inc.,* 304 F.3d 246, 250 (3d Cir. 2002) ("[T]he House Report to the legislation expanding and implementing the U.S. Trustee program on a national scale, embodied in 11 U.S.C. § 307, *expressly puts the U.S. Trustee on the level of a party.*") (emphasis added).

Other courts have held that section 307 means the United States Trustee is a party in interest. *In re Allen,* No. 06–60121, 2007 WL 1747018, at *2 n.5 (Bankr. S.D. Tex. June 18,

2007) ("The [United States] Trustee is a party in interest with the authority to be heard on any matter.") (citing 11 U.S.C. § 307*); In re Columbia Western, Inc., 183 B.R. 660, 664 (Bankr. D. Mass. 1995)* ("Pursuant to [section] 307, the United States [Trustee] is a party in interest."); *In re Gold Standard Baking, Inc., 179 B.R. 98, 104 (Bankr. N.D. Ill. 1995)* ("Undisputedly, the [United States Trustee] is a party in interest in the case") (citing 11 U.S.C. § 307); *see also In re Miles, 330 B.R. 848, 850 (Bankr. M.D. Ga. 2004)* (the United States Trustee may bring a motion to dismiss for improper venue pursuant to Rule 1014(a) because "the legislative history indicates that Congress intended the United States Trustee to be the equivalent of a party in interest, but retain discretion to raise issues").

2.  ***Several sections of the Bankruptcy Code make clear that the United States Trustee is a party in interest.***

Although the Bankruptcy Code does not define "party in interest," in three sections it expressly recognizes that the term "party in interest" includes the United States Trustee. First, section 1121 states that a debtor filing a plan in a small business case is required to "provid[e] notice to parties in interest . . . *including the United States trustee.*" 11 U.S.C. § 1121(e)(3)(A) (emphasis added). Congress would not have used the term "including" unless the United States Trustee were a party in interest.

Likewise, section 330(a)(2) permits the award of compensation to certain officers, including a private trustee, in an amount less than requested by the officer on the motion of the bankruptcy court, "or on the motion of the United States Trustee . . . *or any other party in interest.*" 11 U.S.C. §§ 330(a)(2). This language again suggests the United States Trustee is a party in interest. Finally, section 707(b)(7)(A) and Bankruptcy Rules 2001 and 2015.3 use the same formulation. 11 U.S.C. § 707(b)(7)(A); Fed. R. Bankr. P. 2001(a), 2015.3(b) & (c). Conversely, in sections of the Bankruptcy Code where Congress has distinguished the United

States Trustee from other parties in interest, it has done so expressly.  Section 707(b)(5)(A) of the Bankruptcy Code provides a debtor with the right to recover attorney's fees in certain circumstances if the bankruptcy court does not grant a motion to dismiss a bankruptcy case or convert the case to a chapter 11 or 13 case.  See 11 U.S.C. § 707(b)(5)(A).  This section prohibits recovery of such fees, however, when the United States Trustee filed the motion.  The subsection limits recovery to motions "filed by a party in *interest (other than . . . the United States [T]rustee).*"  Id. (emphasis added).

If the United States Trustee is not a party in interest, this parenthetical reference to the United States Trustee in section 707(b)(5)(A) would be surplusage.  *See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)* ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (*quoting Duncan v. Walker*, 533 U.S. 167, 174 (2001)*) (internal quotation marks omitted); *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997)* ("[L]egislative enactments should not be construed to render their provisions mere surplusage."); *see also* 2A Sutherland Statutory Construction § 46:6 (7th ed. 2010) ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.").

Similarly, section 1121(c) and section 307 show that when the United States Trustee is not granted the same rights as other parties in interest, Congress has expressly limited the United States Trustee's powers.  Section 1121(c) permits any party in interest to file a chapter 11 reorganization plan.  See 11 U.S.C. § 1121(c) ("Any party in interest . . . may file a plan.").  Section 307 qualifies this statement, however, by providing that section 1121(c) does not apply to the United States Trustee.  See 11 U.S.C. § 307 ("The United States trustee may raise and may

appear and be heard on any issue in any case or proceeding under this title *but may not file a plan pursuant to section 1121(c) of this title.")* (emphasis added). If the United States Trustee was not a party in interest, this language in section 307 would be surplusage because the power to file a plan is given by section 1121(c) only to parties in interest.

>    3.    **The legislative history of section 307 and the Bankruptcy Code provide additional support for the conclusion that the United States Trustee is a party in interest.**

The plain language of section 307, together with the support of language in sections 330, 707, and 1121, demonstrate that the United States Trustee is a party in interest, and several courts, including the Seventh and Tenth circuits, have reached that conclusion. *Cf. In re Hayes & Son Body Shop, Inc.,* 101 B.R. 514 (Bankr. W.D. Tenn. 1989) ("[Section 307] is clear and unambiguous, and must be interpreted according to the plain meaning of its terms."). There is no need, therefore, to consult the legislative history surrounding the enactment of the Bankruptcy Code or the creation of the United States Trustee Program. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.' "), *quoted in Kramer v. Banc of American Secs., LLC,* 355 F.3d 961, 966 (7th Cir. 2004) (Manion, J.) (refusing to consider legislative history when the plain language of a statute was clear and noting that "[w]e need not resort to a committee report's summary of legislative intent when the statute is specific.").

Nonetheless, the legislative history for section 307 and the establishment of the United State Trustee program is consistent with the text of the Bankruptcy Code. The House report accompanying the 1986 Bankruptcy Act states that:

> The [United States] Trustee is given standing to raise, appear, and be heard on any issue in any case or proceeding under [the Bankruptcy Code] —except that the U.S. Trustee may not file a plan in a chapter 11 case. *In this manner, the [United States] Trustee is given the same right to be heard as a party in interest,* but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised.

H.R. Rep. No. 99-764, at 27 (1986), *reprinted* in 1986 U.S.C.C.A.N. 5227, 5240 (emphasis added). Thus, section 307 imbues the United States Trustee with the power to act as a party in interest but also grants the United States Trustee the discretion to exercise that power as she sees fit in the interest of ensuring the "proper administration of the bankruptcy laws." *Id*.

This limited distinction between the United States Trustee and other parties in interest was made clear in the next sentences of the House report:

> By not designating the [United States] Trustee as a party in interest, the legislation ensures that there is no confusion over the [United States] Trustee's role in a case. A party in interest normally has a pecuniary interest in a case; the [United States] Trustee has no pecuniary interest in any case, and functions only as an impartial administrator.

*Id.* Thus, the limited differentiation of the United States Trustee from an ordinary party in interest is not a check on the powers of the United States Trustee; rather, it is a confirmation that the United States Trustee is not financially interested in the outcome of bankruptcy cases, and instead, acts "as an impartial administrator." In the present case he is doing just that.[1]

### B. The United States Trustee's Watchdog Role to Protect the Public Interest Confers Standing and Authority to Conduct Rule 2004 Examinations.

The United States Trustee's representation of the public interest in bankruptcy cases provides an independent basis for his authority to conduct Rule 2004 examinations. Here, the

---

[1] The Second and Sixth circuits have recognized, "[w]hile the 'pecuniary interest' formulation is an often used and often useful test of standing in the bankruptcy context, it '*is not the only test*.' Instead, even absent a direct pecuniary interest in the litigation, 'a public interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing.'" *Adams v. Zarnel (In re Zarnel),* 619 F.3d 156, 162 (2d Cir. 2010) (quoting *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 499 (6th Cir. 1990)) (emphasis added).

United States Trustee's role as a bankruptcy watchdog with the statutory authority to "raise and . . . appear and be heard on any issue in any case or proceeding" gives him the right to seek discovery. There is no argument that can be made that should sway this Court to overturn over two decades of well-established bankruptcy practice allowing the United States Trustee to conduct Rule 2004 examinations. *Hamilton v. Lanning*, – U.S. –, 130 S. Ct. 2464, 2473-74 (2010) ("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.") (quotation omitted).

Before section 307 became law, the Fourth Circuit held that the United States Trustee is a party in interest whenever he is carrying out the public interest to prevent an abuse of the bankruptcy process. *In re A-1 Trash Pickup*, 802 F.2d at 774. The Sixth Circuit held the same when, *even after the enactment of section 307*, it first based the United States Trustee's appellate standing on the responsibility of the United States Trustee for "protecting the public interest and ensuring that bankruptcy cases are conducted according to law." *In re Revco D.S., Inc.,* 898 F.2d at 499 ("That is the interest the [United States Trustee] has pursued in this case, and that interest gives him standing to appeal.").[2] The Second Circuit has also held that protecting the public interest confers the United States Trustee with standing to pursue appeals. *In re Zarnel*, 619 F.3d at 162.

None of this is exceptional. The United States Supreme Court ruled more than seven decades ago that the United States has standing to protect the public interest. *SEC v. U.S. Realty & Improvement Co.,* 310 U.S. 434, 459-60 (1940). As an official of the Department of Justice, the United States Trustee may conduct "any kind of legal proceeding" and may "argue any case in a court of the United States in which the United States is interested." 28 U.S.C. §§ 515, 518.

---

[2]        The Sixth Circuit went on to find that section 307 was an additional basis for standing. *In re Revco D.S., Inc.,* 898 F.2d at 500 ("We find further proof in the structure of the bankruptcy code that Congress intended the U.S. trustee to have appellate standing.") (citing 11 U.S.C. § 307).

The United States Trustee – a "watchdog" who guards against fraud and abuse of the bankruptcy system – does just that. *See* H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049 ("The proposed United States Trustees will be the repository of many of the administrative functions now performed by bankruptcy judges, and will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."); *see also Charges of Unprofessional Conduct Against 99-37 v. Stuart*, 249 F.3d 821, 824 (8th Cir. 2001) ("A United States Trustee 'may be compared with . . . a prosecutor,' and 'serve[s] as [a] bankruptcy watchdog[] to prevent fraud, dishonesty, and overreaching in the bankruptcy arena.'") (quoting H.R. Rep. No. 95-595, at 109 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049, 6070); *In re South Beach Secs., Inc.*, 606 F.3d at 371 (the United States Trustee is "the congressionally ordained watchdog – he has a statutory interest in making sure that bankruptcy law isn't abused").

### THE 2004 EXAMINATION ORDER IS SUPPORTED BY GOOD CAUSE

When a motion seeking a Rule 2004 examination is brought and the party subject to the examination objects, the burden is on the party seeking an examination to show "good cause" for the examination to proceed. *Countrywide*, 384 B.R. at 393; *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). Good cause may ordinarily be shown if the examination and requested documents are necessary to establish the claim of the party seeking the examination, or that denial of such request would cause it undue hardship or injustice. *Wilcher*, 56 B.R. at 434-35. Upon a showing of good cause, the party opposing an examination must make a showing that the discovery is oppressive or burdensome. *Id.*

The United States Trustee had good cause to support the 2004 Exam Motion. Good cause is established if the one seeking the Rule 2004 examination has shown that such an

examination is reasonably necessary for the investigation of a legitimate interest. *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (citing *Boeing Airplane Co. v. Coggeshall*, 280 F.2d 654 (D.C. Cir. 1960).  The United States Trustee's legitimate interest is its watchdog role in the bankruptcy system.  The United States Trustee, an officer of the United States Department of Justice and the "watchdog" who guards against fraud and abuse of the bankruptcy system, does just that.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 1, 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049 ("The proposed United States Trustees will . . . serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."); *see also In re South Beach Secs., Inc.*, 606 F.3d 366, 371 (7th Cir. 2010)  (Posner, J.) (the United States Trustee is "the congressionally ordained watchdog – he has a statutory interest in making sure that bankruptcy law isn't abused"). [3]

Good cause exists to examine Chase.  Questions have arisen regarding Chase's bankruptcy procedures in this case.  Specifically, the accuracy, veracity, and validity of the payment change notifications. The payment change notifications in question were purported to be signed by Lori Harp. It is necessary for the United States Trustee to question Ms. Harp under oath to determine the factual circumstances surrounding the preparation and signing of the payment change notifications. Ms. Harp's testimony is necessary in addition to the witness that Chase designates to testify on the topics identified in the order and exhibits attached to this

---

[3]    The importance of the United States Trustee's role in uncovering bankruptcy abuse was recently discussed at length in another decision involving mortgage servicers, in which the bankruptcy court observed:

> While the Court would prefer not to have to invoke § 105(a) and instead have debtors' attorneys lodge objections to ill-founded proofs of claim and motions to lift stay, in actual practice serious and thorough challenges are rarely mounted.  The absence of such challenges argues in favor of this Court and the [United States Trustee] becoming more – not less– involved in scrutinizing payment histories and conduct of mortgagees to avoid abuse of the bankruptcy system becoming accepted practice.

*In re Parsley*, 384 B.R. 138, 173 (Bankr. S.D. Tex. 2008); *see also id.* at 146 ("Although it is uncommon, and possibly unprecedented until recently, for the [United States Trustee] to focus on the conduct of a mortgagee, a servicer, or its counsel in a Chapter 13 case, it does not follow that the [United States Trustee] is outside of its Congressional mandate.").

Motion. These issues directly relate to administration of this bankruptcy estate and the integrity of the bankruptcy system.  The U.S. Trustee seeks to ascertain whether the conduct of Chase deviated from the standards established by the bankruptcy code, and/or whether its particular actions threatened an abuse of the bankruptcy system or its procedures.  28 U.S.C. § 528(3)(G); 11 U.S.C. § 307; and *In re A-1 Trash Pickup, Inc.,* 802 F.2d 774, 775 (4th Cir. 1996) (Congress intended the United States Trustee to be an enforcer of bankruptcy laws).  In this case a hearing was held on the Debtors' Objection to the Notification of Mortgage Payment Change and the Court determined the United States Trustee could proceed with and Ex Parte Motion for a 2004 Examination based on the facts and circumstances of this case.

### I.  Scope Of Rule 2004

The requested Subpoena and Examination fits comfortably within the scope of the bankruptcy rules. Rule 2004 permits the "examination of any entity" provided the examination "relate[s] . . . to the acts, conduct, *or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate*, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

Rule 2004 is extremely broad in scope and great latitude in discovery is ordinarily permitted.  *In re Edic*, No. 05-41557, 2005 WL 6443541, at *1 (Bankr. N.D. Tex. Oct. 7, 2005) (citing 8 Collier on Bankruptcy ¶ 2004.02[1] (15th ed. Rev. 2005*)); see also Dynamic Finance Corp. v. Kipperman (In re North Plaza, LLC),* 395 B.R. 113, 122 n.22 (S.D. Cal. 2008) ("It is well established that the scope of a Rule 2004 examination is exceptionally broad and provides few of the procedural safeguards found in Federal Rule of Civil Procedure 26."); *In re Table Talk, Inc.,* 51 B.R. 143, 145 (Bankr. Mass. 1985) (scope of discovery afforded is "unfettered and broad").  A Rule 2004 examination is "commonly recognized as permitting discovery in the

nature of a 'fishing expedition.'" *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (citation omitted); *In re Wilcher*, 56 B.R. at 433; *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). This broad construction of Rule 2004 permits broader inquiry than that allowed under the Federal Rules of Civil Procedure. *Wilcher*, 56 B.R. at 433.

The Notice and Examination seeks information concerning specific information on the Belzak account. All of the document requests seek information relating to the underlying creditor/debtor relationship between Chase and the Belzaks.

## II. The Examination Should Be In Detroit.

"The deposing party ordinarily may set the place for deposition wherever that party wishes, subject to the Court's power to grant a protective order pursuant to Rule 26(c)(2)." *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987). This freedom is curtailed by the presumption that "'[t]he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business.'" *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

However, this presumption can, in turn, be overcome after consideration of several factors including:

1. Counsel for the parties being located in the forum district;

2. Plaintiff seeking to depose only one corporate representative;

3. Defendant choosing a corporate representative that resides outside the location of the principal place of business and the forum district;

4. Significant discovery disputes that may arise and the anticipated necessity of the resolution by the forum court; and

5. The claim's nature and the parties' relationship such that "an appropriate adjustment of the equities favors a deposition site in the forum district."

*Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992) (citing *Turner v. Prudential Ins. Co.,* 119 F.R.D. 381, 383-84 (M.D.N.C. 1988)); *see also Armsey v. Medshares Mgmt. Svcs., Inc.,* 184 F.R.D. 569, 571 (W.D. Va. 1998); *Sonitrol Distributing Corp. v. Security Controls, Inc.,* 113 F.R.D. 160, 161 (E.D. Mich. 1986) ("While it is true that a corporate officer should ordinarily be deposed at the principal place of business this is not a hard and fast rule.") (internal citation omitted).

Thus, "'[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, *especially in the forum [where the action is pending],* for the convenience of all parties and in the general interests of judicial economy.'" *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005) (quoting *Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 171 (S.D.N.Y.1985)) (emphasis added); *see also El Camino Res. Ltd. v. Huntington Nat. Bank,* No. 07-598, 2008 WL 2557596, at *4 (W.D. Mich. June 20, 2008) ("Regardless of what label is applied, the preference for a corporation's principal place of business is relatively easy to overcome.").

In this case, the factors militate in favor of conducting the examination in Detroit. First, counsel for the United States Trustee is located in Detroit area and that is where the claim was filed. Second, Chase has numerous bank locations in the district and has significant ties to the area. Third, Chase would likely not see to conduct the exam in the location of their principal place of business but will require its witnesses to travel to New York. Fourth, based on the continued violations of the automatic stay the Debtors may want to be involved in the Examination. Sixth, Chase is no stranger to the Eastern District of Michigan and has appeared as

a creditor in a significant amount of cases this year. Finally, this Court has already ruled the Examination will take place at the location most convenient to the United States Trustee.

## <u>CONCLUSION</u>

To assure compliance with any such order as contemplated by Fed. R. Bankr. P. 2004(c), the United States Trustee seeks specific Court authority to issue a subpoena to Chase for the reasons stated above the Motion should be granted.

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By:    /s/ Kelley Callard (P68537)
Kelley.Callard@usdoj.gov
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-6773

Dated: November 8, 2013

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In re:                                          Case No. 10-23963-DOb

**DAVID S. BELZAK,**                            Chapter 13
**LYNDA J. BELZAK,**
                                                HON. DANIEL S. OPPERMAN
      Debtors.

_____/

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on November 8, 2013, I served copies as follows:

1.    Documents Served:      *Motion for 2004 Exam of JPMorgan Chase Bank, National Association, and Lori Harp, Or In The Alternative, The Actual Person Who Signed The Notice Of Mortgage Payment Change, And Requiring Production Of Documents Pursuant To Fed. R. Bankr. Pro. 2004, Brief in Support,* and *Certificate of Service.*

2.    Served Upon:      David S Belzak
      Lynda J. Belzak
      4444 Raymond Rd
      Beaverton, MI 48612

      JP Morgan Chase Bank, N.A.
      2901 Kinwest Pkwy
      Irving TX 75063-5812

      Lori Harp
      JP Morgan Chase Bank, N.A.
      Mail Code LA4-5555
      700 Kansas Lane
      Monroe, LA 71203

      Jim Miller
      Home Lending Sr. Executive VP
      JP Morgan Chase
      8333 Ridepoint Drive
      Irving, TX 75063

JP Morgan Chase Bank, NA
270 Park Avenue
New York, NY 10017

JPMorgan Chase Bank, NA
PO Box 24785
Columbus, OH 43224

Lori Harp
JPMorgan Chase Bank, NA
PO Box 24785
Columbus, OH 43224

3.      Method of Service                    First Class Mail

                                             **DANIEL M. McDERMOTT**
                                             **UNITED STATES TRUSTEE**
                                             Region 9


                            By:     /s/ Barbara Heilig
                                    Barbara.Heilig@usdoj.gov
                                    Paralegal Specialist
                                    Office of the U.S. Trustee
                                    211 West Fort Street - Suite 700
                                    Detroit, Michigan 48226
                                    313.226.4543

Dated: November 8, 2013